UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-10049-RGS

LIDIYA PASHOLIKOVA

v.

CITY OF EVERETT, ET AL.

MEMORANDUM AND ORDER

July 25, 2011

STEARNS, D.J.

On January 5, 2011, plaintiff Lidiya Pasholikova, a resident of Revere, Massachusetts, filed a self-prepared Complaint alleging several claims in connection with her treatment at, and subsequent expulsion from, the facilities of the Edward G. Connolly Center (Center), a senior center located in Everett, Massachusetts. For the reasons stated below, the court directs the plaintiff to show cause why this action should not be dismissed.

BACKGROUND

Pasholikova names five defendants: (1) the City of Everett; (2) Melissa A. Murphy, City Solicitor and Chief of Staff of the Mayor of the City of Everett; (3) Michael Buckley, former Chief of Staff of the Mayor of Everett; (4) Carolyn Lightburn, director of the Center; and (5) Dale Palma, another Center employee.

In the first-filed Complaint–Complaint 1[1]--Pasholikova alleges that, having been

---

[1] On January 5, 2011, Pasholikova submitted a one-page document captioned as a complaint, which was docketed as document #1. Two days later, she submitted a nine-page document captioned as a complaint, which was also docketed as document #1. The second complaint contains five pages of factual allegations giving rise to the legal claims set forth in the first complaint. Thereafter, on January 21, 2011, the plaintiff submitted forty-five pages of exhibits to the complaints, which were docketed as document #4. In referring to these three filings, the court will identify the first complaint as "Complaint 1," the second-filed complaint as

"emotionally devastated by discriminatory treatment" by the individual defendants, she is bringing the action for:

> a) injunctive and declaratory relief under Title III of the ADA; b) compensatory damages under MGL ch. 272: s. 98: Discrimination in admission to, or treatment in, place of public accommodation; forfeiture; civil right; [and] c) violation of Due Process Right by solicitor: Melissa A. Murphy, and the chief of staff of Mayor: Michael Buckley.

Compl. 1, ¶ 2. Pasholikova, who represents that she is a United States citizen from Russia, also alleges that Lightburn, Palma, and Murphy committed unspecified violations of the plaintiff's civil rights, discriminated against her national origin, and engaged in "professional misconduct due to an intentional discrimination." *Id.* ¶ 3. Complaint 1 does not contain any factual allegations supporting the plaintiff's conclusions of liability.

Complaint 2 identifies the parties, contains a jurisdictional allegation[2], and sets forth factual allegations. It does not include identify any specific causes of action or legal theories of liability. The factual allegations set forth in Complaint 2 are divided into subsections which loosely correspond to the various incidents at the Center which form the basis of her claims. Briefly, those incidents include: (1) being reprimanded by Center staff for opening the door to the exercise room; (2) having her keys stolen by Center employee Palma; (3) being reprimanded by Center staff for going barefoot during exercise class; and (4) being permanently expelled from the Center.

---

"Complaint 2," and the exhibits to the complaint (document #4) as "Exhibits."

[2]Pasholikova alleges jurisdiction is premised on 28 U.S.C. § 1332, which provides for jurisdiction where the parties are of diverse citizenship and the amount in controversy exceeds $75,000. However, diversity does not exist because the parties are not citizens of different states. As the plaintiffs brings claims under federal law, the court will assume that federal question jurisdiction under 28 U.S.C. § 1331 exists.

It may be inferred from Complaint 2 and the Exhibits that there has been a history of disputes between Pasholikova and the Center staff. The court summarizes the pertinent factual allegations.

I. Reprimand by Center Staff for Opening Doors

Beginning in 2003, Pasholikova participated in aerobics classes at the Center. Lightburn is the director of the Center. Palma began to work at the Center in 2006-07. Prior to Palma's arrival, Center patrons opened windows in the exercise room for fresh air. Palma instituted a policy to keep the windows closed. During a public discussion concerning this issue, at which the plaintiff was present, Lightburn informed Center patrons that the closed-window policy was an economical measure to keep heated or cooled air (as the season dictated) inside the building. Pasholikova stated that the cross ventilation was healthy, and, in the case of opening the window in the winter, the cool air from the outside would quickly warm up. Lightburn did not acknowledge Pasholikova's input, and the plaintiff felt "emotionally harmed by that way ignorance [sic]." Compl. 2, ¶ 12. After this discussion, women participating in aerobics classes at the Center continued to slightly open one door without repercussion, but, on one occasion, when Pasholikova attempted to open the door, Palma "arrogantly" closed it. *Id.* ¶ 14. Pasholikova responded by telling Palma that he was "not a gentleman." *Id.* ¶ 15. Palma apparently reported the plaintiff's conduct to Lightburn, and the plaintiff was informed soon thereafter by the aerobics instructor that she could not attend classes if she insisted on opening doors to the outside during class.

II. Palma Stealing Keys

Because Palma was "a huge overweight man" and "a friend of [the] Mayor," he had a

3

"jealous attitude to aerobic class [sic]" and influence over the Center director and other Center staff. *Id.* ¶ 18. In September 2008, the aerobics instructor left the Center quickly in emotional distress. Lightburn explained to the plaintiff and other aerobics class participants that the instructor would be back in two weeks. Feeling "an impulse to express [her] feelings" in front of the gathered group, Pasholikova stated, "This is because Dale [Palma], he is jealous and arrogant. I am his victim too." *Id.* ¶ 20. Lightburn apparently immediately told Palma what Pasholikova had said, because, within minutes, Palma came out of his office, passed the plaintiff, and exclaimed, "How you can say those words!" *Id.* ¶ 21. Because of the plaintiff's insult, Palma formed the intent to "commit revenge" against the plaintiff. *Id.* Later that month, Palma stole Pasholikova's keys.

III. "Barefoot Harassment"

On March 25, 2009, Palma told Pasholikova, who had been working out barefoot, that the plaintiff needed to put shoes on because it was dangerous to exercise without shoes on. Thereafter, the plaintiff interrupted her workout to ask Lightburn to show the plaintiff in writing the prohibition on exercising barefoot. At the end of the workout class, another Center employee distributed a notice to the class members that participants in certain exercise activities were required to wear shoes "to ensure balance to avoid injury." Compl. 2, ¶ 33; Exhibits at 27. The notice did not state that failure to wear shoes was a health code violation.

Two days later, Pasholikova brought Lightburn a note in which the plaintiff stated that she would not blame the City of Everett for any injuries she suffered as a result of going barefoot during exercise classes at the Center. *See* Exhibits at 28. An argument between Lightburn, Palma, another Center employee, and Pasholikova ensued concerning the plaintiff's failure to

4

register her visits to the Center on a computer and the plaintiff's earlier "loss" of her keys at the Center. Pasholikova told Palma to "shut up," after which Lightburn told the plaintiff to leave the Center. Compl. 2, ¶¶ 34-35. The plaintiff responded that Palma was a thief. Lightburn then called police. After two officers arrived, Pasholikova unsuccessfully attempted to apologize to Palma. Lightburn told the plaintiff that she was suspended from the Center for a week because, in the past, she had failed to follow directives to keep Center doors closed during exercise classes.

Four days into the week-long suspension, on March 31, 2009, Pasholikova returned to the Center to participate in a class and to present to Lightburn information from the internet which indicates that exercising in bare feet is healthy. When Palma tried to talk to Pasholikova during that class, she told him, "You have no right to talk to me since you stole my keys." Palma left the room, and subsequently police officers arrived, watched the class for a while, and then left. Following the class, Pasholikova found the police officers outside. When she tried to offer them an explanation for why she came to the class, they told her she had to address her concerns to City Hall. As a result, she went to City Hall that day to complain about her treatment at the Center.

III. Expulsion from the Center

At City Hall, Pasholikova complained to "Joanne" (presumably a City employee) about the Center staff's outrageous conduct in calling the police and harassing the plaintiff because she exercised barefoot. While Pasholikova was waiting at City Hall, Murphy and Buckley[3] met with

---

[3] At the time, Buckley was the Mayor's Chief of Staff and Murphy was the Assistant City Solicitor at the time.

the Center staff. At the conclusion of their meeting, Pasholikova was presented with a letter informing her of her permanent expulsion from the Center because of her "pattern of disruptive behavior, which has required police presence at the . . . Center on two occasions." Exhibits at 21. The letter informed her that, if she attempted to enter the Center, she would be trespassing and subject to arrest. Buckley told the plaintiff that she could file a written complaint, which would be followed by a hearing between the parties.

In April 2009, Pasholikova did file a written complaint and submitted it to Buckley. On August 6, 2009, Pasholikova received a response to her written complaint from Murphy. Murphy stated therein that it was "the City of Everett's final determination that [the plaintiff] will not be allowed to return to the Connolly Center because of [her] disruptive behavior." Exhibits at 32. Murphy also stated that the determination was final, and that no further appeals would be considered. Murphy suggested that Pasholikova use the senior center in her town of residence.

In December 2009, the plaintiff sent a letter to Buckley and Lightburn in which she apologized for her past behavior and stated that she had resolved to follow all requests made by the Center's management. *See* Exhibits at 35. In a letter to the plaintiff dated January 5, 2010, the City Solicitor informed Pasholikova that she was still prohibited from participating in activities held at the Center.

The plaintiff then filed an administrative complaint with the Massachusetts Commission Against Discrimination (MCAD), claiming that the Center and the City of Everett had discriminated against her on the basis of national origin. The MCAD determined that the respondents had met their burden of articulating a legitimate, non-discriminatory reason for their

actions, had offered proof that the articulated reasons were the real reason for their conduct, and that Pasholikova had not shown by the preponderance of evidence that the respondents' proffered reasons were a pretext for discrimination.[4]

## DISCUSSION

I. <u>Court's Authority to Screen the Complaint</u>

On March 24, 2011, the court granted Pasholikova's Motion for Leave to Proceed *in forma pauperis* but deferred further action pending a preliminary review of the Complaints.

Because Pasholikova is proceeding *in forma pauperis*, her Complaints are subject to screening under 28 U.S.C. § 1915(e)(2). This statute authorizes federal courts to dismiss actions in which a plaintiff seeks to proceed without prepayment of fees if the action is malicious, frivolous, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2). In conducting this review, the court liberally construes Pasholikova's Complaints because she is proceeding *pro se*. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Instituto de Educacion Universal Corp. v. U.S. Dep't of Educ.*, 209 F.3d 18, 23 (1st Cir. 2000). Nevertheless, upon review of the Complaints, the court finds that this action is subject to dismissal for the reasons set forth below.

II. <u>Claims of Discrimination: Failure to Comply with Fed. R. Civ. P. 8</u>

To state a claim for relief, a complaint must meet the pleading requirements of Fed. R.

---

[4]It appears that, in front of the MCAD, the Center and the City of Everett took the position that Pasholikova was expelled from the facility because she ignored repeated warnings not to disrupt the exercise class, continued to open doors, pushed Center patrons out of a spot where she wanted to stand, yelled at Center staff and patrons, repeatedly took off her shoes even after being told it was a violation of Center rules (because the health department had notified the Center that it was a violation of the sanitation code), and failed to leave the Center when directed to do so. *See* Exhibits at 12-13.

7

Civ. P. 8(a) (Rule 8(a)). Rule 8(a) requires a plaintiff to include in a complaint, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff must plead facts that "allo[w] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. Rule Civ. Proc. 8(a)(2)). A plaintiff must plead more than a mere allegation that the defendant has unlawfully harmed her, and "[t]hreadbare recitals of a cause action, supported by mere conclusory statements, do not suffice." *Id.* at 1949.[5]

Whether Pasholikova's federal claims of discrimination are considered as arising under the Civil Rights Act of 1964[6] or the equal protection clause of the Fourteenth Amendment of the United States Constitution, her factual allegations do not permit the court to reasonably infer that

---

[5]Notwithstanding the court's duty to be less stringent with *pro se* complaints, the court is not required to "conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979); *see also Street v. Fair*, 918 F.2d 269, 271 (1st Cir. 1990) (pro se plaintiffs must plead specific facts backing up claims of civil rights violations), or "construct a legal theory on a plaintiff's behalf," *Whitney v. New Mexico*, 113 F.3d 1170, 1174 (10th Cir. 1997).

[6]Pasholikova asserts she is seeking relief under Title III of the "ADA." Whether she is referring to the Age Discrimination Act (42 U.S.C. §§ 6101-6107) or the Americans with Disabilities Act (42 U.S.C. § 12101, *et seq*.) is unclear, but she has not asserted any facts to support a claim under either statute. Rather, Pasholikova states her claim is for discrimination due to her national origin (Russian). Since her claim stems from her use of the Center, the court presumes her claim is made pursuant to the Civil Rights Act of 1964. Titles II and III of the Civil Rights Act of 1964 provide for "equal access" to places of public accommodation, 42 U.S.C. § 2000a(a), and "equal utilization of" public facilities without discrimination or segregation on the ground of certain protected characteristics, including national origin, 42 U.S.C. § 2000b(a).

she was discriminated against on the basis of national origin.

Pasholikova makes the conclusory allegation that she was discriminated against on the basis of national origin, yet her factual allegations do not support that assumption. Rather, her allegations indicate that there was a history of charged interactions between the plaintiff, the defendants, and other non-defendant Center staff over the validity of and the plaintiff's compliance with facially rational Center policies. During these interactions, the plaintiff challenged the wisdom of Center policies, violated the policies, and criticized and even insulted Center staff. While it may be that Pasholikova's objections to the Center policies had a valid basis, and that Center staff were not always polite, the court cannot reasonably infer that the defendants discriminated against plaintiff on the basis of her national origin. Even under a generous reading, Pasholikova's claims of discrimination are speculative and do not meet the pleading requirements to set forth plausible claims.

III.     Failure to State Due Process Claims

Pasholikova brings due process claims against Murphy and Buckley. Claims for violations of federal rights by state actors must be brought under 42 U.S.C. § 1983 (§ 1983). *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001) ("[A] litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but [rather] must utilize 42 U.S.C. § 1983."). This statute provides that any "person," acting under the color of state law, who "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. In order to state a § 1983 claim, a plaintiff

9

must allege (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that this conduct deprived the plaintiff of rights, privileges or immunities secured by the United States Constitution or other federal law. *See Cepero-Rivera v. Fagundo*, 414 F.3d 124, 129 (1st Cir. 2005).

While Pasholikova has sufficiently alleged that Murphy and Buckley were acting under the color of state law, she has not alleged facts from which it may reasonably be inferred that these defendants deprived her of a federal right. The due process clause of the Fourteenth Amendment "protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Pasholikova's exclusion from the Center does not amount to a deprivation of any of these interests. Moreover, even if she has been deprived of a protected interest, she has not pled facts from which the court may reasonably infer that Murphy or Buckley deprived her of that interest without due process of law. On the contrary, she has alleged facts that show she was given notice and the opportunity to be heard via submission of a written complaint. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) (due process requires notice an opportunity to be heard, "either in person *or in writing*" (emphasis added)); *Giordano v. City of New York*, 274 F.3d 740, 752 n.6 (2d Cir. 2001) (due process does not necessarily require an opportunity to be heard in person). That the defendants failed to orally confer with Pasholikova after she submitted her written complaint does not amount to a deprivation of process, even it the lack of hearing seems "unfair" to the plaintiff.

IV.     Declination to Exercise Supplemental Jurisdiction

Pasholikova's discrimination claim under M.G.L. ch. 272, § 98 (prohibiting

10

discrimination in places of public accommodation) and her other state law claims ("professional misconduct"; emotional distress) do not have any federal constitutional or statutory implications. Thus, in the absence of a *bona fide* federal claim, this court declines to exercise supplemental jurisdiction over any state law claims. *See* 28 U.S.C. § 1367(c)(3).

V.      Declination to Appoint *Pro Bono* Counsel

In the body of Complaint 1, Pasholikova requests appointment of *pro bono* counsel. Under 28 U.S.C. § 1915(e)(1), the court "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). A civil plaintiff, however, lacks a constitutional right to free counsel. *DesRosiers v. Moran*, 949 F.2d 15, 23 (1st Cir. 1991). In order to qualify for appointment of counsel, a party must be indigent and exceptional circumstances must exist such that denial of counsel will result in fundamental unfairness impinging on the party's due process rights. *Id.* To determine whether exceptional circumstances sufficient to warrant the appointment of counsel are present in a case, the court must examine the total situation, focusing on the merits of the case, the complexity of the legal issues, and the litigant's ability to represent him or herself. *Id.* at 24.

Here, the court finds that appointment of counsel is not warranted because, as explained above, the plaintiff has not set forth meritorious federal claims.

Accordingly, this court DECLINES to appoint *pro bono* counsel for Pasholikova.

V.      Order to Show Cause and to File an Amended Complaint

For the reasons set forth above, this action shall be DISMISSED within thirty-five (35) days from the date of this Memorandum and Order unless Pasholikova demonstrates good cause in writing why this action should not be dismissed. Pasholikova's Show Cause Response shall

not reiterate the claims made in the Complaints or other pleadings, but must address with specificity the legal impediments discussed herein. Any Show Cause Response shall be limited to five (5) five double-spaced pages.

In addition to the show cause response, Pasholikova shall file an "Amended Complaint" curing the deficiencies noted herein, within 35 days of the date of this Memorandum and Order. In other words, Pasholikova shall set forth her claims in accordance with Rule 8 of the Federal Rules of Civil Procedure. She shall list in a clear fashion each defendant she seeks to include in this action, along with a brief statement of the legal claim(s) asserted against each defendant. Specifically, she shall assert her claims separately as to each defendant (identifying if the claim is based on national origin discrimination, due process, or some other legal cause of action). She also shall provide underlying facts to allow the court to make reasonable inferences that she has set forth plausible federal claims upon which relief may be granted.

Failure to comply with this directive will result in a dismissal of this action. No summonses shall issue pending further Order of this court.

ORDER

Based on the foregoing, it is hereby Ordered that:

1. Within 35 days from the date of this Memorandum and Order, plaintiff shall demonstrate good cause in writing why this action should not be dismissed, addressing the legal impediments to her claim(s). Plaintiff also shall file an Amended Complaint setting forth her claim(s) in accordance with Rule 8 of the Federal Rules of Civil Procedure; and

2. The court <u>DECLINES</u> to appoint *pro bono* counsel for Plaintiff.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE